1   Kurt A. Franklin (Bar No. 172715)
    **FENNEMORE WENDEL**
2   1111 Broadway, 24th Floor
    Oakland, California 94607-4036
3   Telephone: (510) 834-6600
    Fax: (510) 834-1928
4   Email:  kfranklin@fennmorelaw.com

5   Attorneys for Defendant
    ALAMEDA-CONTRA COSTA TRANSIT
6   DISTRICT

7   Anthony Edward Goldsmith (Bar No. 125621)
    **DERBY MCGUINNESS & GOLDSMITH**
8   21550 Oxnard Street, Suite 300
    Woodland Hills, CA 91367
9   (818) 213-2762
    Fax: (510) 359-4419
10  Email: agoldsmith@dmglawfirm.com

11  Attorneys for Plaintiff
    ANDREW GALPERN
12

13

14

15

16              UNITED STATES DISTRICT COURT

17      NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DISTRICT

18

19

20  ANDREW GALPERN,                    | Case No. 20-cv-02572-TSH

21          Plaintiff,

22      vs.                            | **STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND [PROPOSED] ORDER FOR COURT TO RETAIN JURISDICTION TO ENFORCE SETTLEMENT**

23  ALAMEDA-CONTRA COSTA TRANSIT
    DISTRICT
24

25          Defendants.

26

27

28

---

FENNEMORE WENDEL
ATTORNEYS AT LAW

**FILED**

Oct 17 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

1  IT IS HEREBY STIPULATED by and between Plaintiff ANDREW GALPERN, on the

2  one hand, and, Defendant ALAMEDA-CONTRA COSTA TRANSIT DISTRICT on the other

3  hand, the parties to this action, by and through their respective counsel, that pursuant to Federal

4  Rule of Civil Procedure 41(a)(1)(A)(ii), the above-captioned action be dismissed with prejudice in

5  its entirety.  Each side shall pay its own attorneys' fees and costs except as expressly set forth in

6  the Court-Enforceable Settlement Agreement And General Release ("Settlement Agreement and

7  General Release").  Defendant agrees to the dismissal with prejudice.

8  Further, Plaintiff and Defendant have entered into the attached Settlement Agreement and

9  General Release which settles all aspects of the lawsuit against Defendant without admission by

10  any party of wrongdoing, liability, or fault.  The Settlement Agreement and General Release states

11  in-part that "The Parties shall request that the Court retain jurisdiction of the terms of this

12  Agreement and Exhibit B for a period of thirty six (36) months pursuant to the Stipulation of

13  Dismissal of Action With Prejudice and [Proposed] Order for Court to Retain Jurisdiction to

14  Enforce Settlement Agreement, which is attached hereto as Exhibit A, and this Agreement shall be

15  an exhibit to the Dismissal with Prejudice."  This is to ensure that the parties have the ability to

16  seek this Court's help in enforcing enforcement of the Settlement Agreement and General Release,

17  the parties respectfully ask the Court to retain jurisdiction to enforce the Settlement Agreement

18  and General Release and its incorporated exhibits.

19  This Stipulation and Order may be signed in counterparts, and facsimile, or electronically

20  transmitted signatures shall be valid and binding as original signatures.

21  WHEREFORE, Plaintiff and Defendant, by and through their attorneys of record, so

22  stipulate.

23  Dated:   10/10/2023                         DERBY MCGUINNESS & GOLDSMITH

24

25  By: _____

26  Anthony Edward Goldsmith

27  Attorney for Plaintiff

28

2

STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND [PROPOSED] ORDER FOR COURT TO
RETAIN JURISDICTION TO ENFORCE SETTLEMENT

29618363.1/062638.0001

HENNEFER WOOD
ATTORNEYS AT LAW

1    Dated: ~~July 26, 2023~~            FENNEMORE WENDEL
2           October 9, 2023

3                                        By: _____
4                                            KURT A. FRANKLIN
                                             Attorney for Defendant
5

6

7                                    ORDER
8

9           Pursuant to the Settlement Agreement and General Release, and for good cause shown, the

10   Court shall retain jurisdiction of this action to enforce provisions of this Settlement Agreement

11   and General Release for thirty-six (36) months after the date of entry of this Order by the Court, or

12   until injunctive relief is complete, whichever occurs earlier.

13

14

15   Dated: _____October 17,_____, 2023   _____
                                          HONORABLE THOMAS S. HIXON
16                                        United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

                                          3

FENNEMORE WENDEL
ATTORNEYS AT LAW

STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND ~~[PROPOSED]~~ ORDER FOR COURT TO
RETAIN JURISDICTION TO ENFORCE SETTLEMENT
29618363.1/062638.0001

# COURT-ENFORCEABLE SETTLEMENT AGREEMENT AND GENERAL RELEASE

*Andrew Galpern v. Alameda-Contra Costa Transit District*
**(U.S.D.C. for the Northern District of California Case No. 20-cv-02572-TSH)**

COURT-ENFORCEABLE SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS COURT-ENFORCEABLE SETTLEMENT AGREEMENT AND GENERAL RELEASE (the "Agreement") is entered into by and between Andrew Galpern ("Plaintiff" or "Galpern"), on the one hand, and Alameda-Contra Costa Transit District ("District" "AC Transit" or "Defendant") on the other hand. Together, Plaintiff and the District are referred to as "the Parties."

## RECITALS

WHEREAS, on April 14, 2020, Plaintiff Andrew Galpern filed a Complaint in the United States District Court for the Northern District of California entitled *Andrew Galpern v. Alameda-Contra Costa Transit District,* U.S.D.C. for the Northern District of California Case No. 20-cv-02572-TSH (hereinafter the "Action"), relating to alleged discrimination that he experienced, which focused on wheelchair securement. Plaintiff alleged that the District violated Title II of the ADA (42 USC § 12101, *et seq.*), Section 504 of the Rehabilitation Act of 1973, the Unruh Act (California Civil Code section 51), the Disabled Persons Act (Civil Code sections 54 and 54.1), the California Government Code §11135, and the California Health & Safety Code section 19955 (collectively "Access Laws"), by allegedly failing to provide full and equal access to its buses and transportation services at the Alameda-Contra Costa Transit District in Alameda and Contra Costa Counties, California, along with commuter service in the City and County of San Francisco.

WHEREAS, more specifically, Plaintiff alleges that notwithstanding the training Defendant alleges to provide to bus drivers and other staff, and notwithstanding the District's past and present policies, guidelines and protocols that the District maintains to provide meaningful access to transportation services, that the District's bus drivers have with regularity not adequately secured his wheelchair to buses, or, have not secured him and other passengers in a safe manner in compliance with the Access Laws.

WHEREAS, the Action sought injunctive relief to ensure adequate policies, practices, and training to ensure that wheelchair using passengers are routinely, safely secured on buses, as well as damages, attorneys' fees, expenses, and costs of suit.

WHEREAS, District denies any wrongdoing and each of Plaintiff's allegations and contentions of law, including allegations related to his claimed denial of meaningful access to District's buses and related transportation service, and, District further denies that Plaintiff has stated a claim under applicable state and federal public accommodation laws, or, under any other law.

WHEREAS, District further denies that Plaintiff has standing to enforce certain disability-access claims related to the District's' facilities, programs, and services. Further, District denies that it is a "business establishment" or involved in "business like activity" under the Unruh Act, and/or, relatedly, that it is subject to Unruh Act or any other damages. See, *Brennon B. v. Superior Court of Contra Costa County*, 13 Cal. 5th 662 (2022); *Brennon B. v. Superior Court of Contra Costa County* 57 Cal. App. 5th 367 (2020) ("nothing in the historical context from which the Unruh Act emerged suggests the state's earlier public accommodation

statutes were enacted to reach 'state action.' And there is much authority to the contrary...."); *White v. City and County of West Sacramento,* 2021 WL 4068009 (E.D. Cal. 2021); and *Martinez v. City of Clovis,* 2023 WL 2820092 (2023). Further, District denies that it has been deliberately indifferent to Plaintiff's alleged disabilities and any public transit service provided to him, and/or that it has intentionally engaged in discriminatory action against Plaintiff or anybody else. See, *Jones v. National Railroad Passenger Corporation, AMTRAK; Sant Cruz Metropolitan Transit District* 848 Fed. Appx. 293 (9th Cir. 2021).

WHEREAS, District affirmatively asserts that it provides persons who use wheelchairs, and other persons who need assistance with walking, as well as other persons with disabilities, including Plaintiff, meaningful and safe access to its bus service, as well as other programs, services, and facilities, and further asserts that it meets applicable access and safety guidelines and regulations. See, *Kirola v City and County of San Francisco*, 860 F. 3d 1164 (9th Cir.2017).

WHEREAS, District further asserts that it adequately trains its bus drivers, that it addressed Plaintiff's concerns when brought to its attention, and, that it provides bus passengers that use wheelchairs and other mobility devices with meaningful access to its services, and further asserts that the District meets applicable access and safety guidelines.

WHEREAS, Plaintiff denies and disputes each of the District's assertions, statements, contentions of law, and other legal positions, including allegations of fact and law as set forth in these Recitals.

WHEREAS, the Parties will ask the Court in this matter to retain jurisdiction to enforce this Agreement.

WHEREAS, the Parties utilized the Northern District of California's Alternative Dispute Resolution ("ADR") Program and mediated this case over multiple days before ADR Program Director Tamara Lange, and, as a way to avoid further litigation and uncertainty, Plaintiff and the District wish to settle this matter as per the terms included in this Agreement.

## WITNESSETH

IT IS THEREFORE AGREED by and among the parties hereto as follows:

**1.** **Dismissal with Prejudice**. Within 15 days of receipt by Plaintiff's counsel of this Agreement executed by all parties and payment of all amounts described below in Paragraph 2, District shall deliver to Plaintiff's attorneys of record an executed Stipulation of Dismissal with Prejudice ("Dismissal"), a copy of which is attached hereto as Exhibit A, in accordance with Fed. R. Civ. P. 41(a)(1)(A)(ii) and N.D. Cal. L.R. 77-2 (c). Plaintiff shall e-file the Dismissal within 5 days of receipt of the Dismissal executed by District's counsel.

**2.** **Settlement Compensation**. The Districts shall pay or cause to be paid to Plaintiff the aggregate sum of One Hundred Eighty-Two Thousand Seven Hundred and Fifty Dollars ($182,750) ("Settlement Compensation") in full and final settlement of Plaintiff's claims for all alleged damages for physical personal injuries, civil rights violations, penalties, attorneys' fees, litigation expenses, and costs. The aggregate lump sum Settlement Compensation is comprised of Twenty-Two Thousand and Seven Hundred and Fifty Dollars ($22,750) paid to

-2-

Plaintiff for alleged damages, and, One Hundred Sixty Thousand Dollars ($160,000) paid to his law firm, Derby, McGuinness & Goldsmith, LLP. Accordingly, the aggregate lump sum Settlement Compensation shall be made by two checks: (1) a check made payable to "DERBY MCGUINNESS & GOLDSMITH LLP TRUST ACCOUNT" for Twenty-Two Thousand Seven Hundred and Fifty Dollars ($22,750), and (2) a check for One Hundred Sixty Thousand Dollars ($160,000) made payable to "DERBY, MCGUINNESS & GOLDSMITH, LLP as compensation for claimed attorneys' fees and costs." The Settlement Compensation is to be made within 15 days of the Effective Date of the Agreement. As a further condition of the Settlement Compensation, Plaintiff's attorneys will supply a W-9 form. Plaintiff and his counsel will be responsible for any and all taxes associated with the lump sum payment designated above, if any, and shall indemnify District for any related tax assessments should they be assessed against District.

    **3.**     **Equitable Relief.**   Plaintiff understands that the Defendant disputes liability. With the goal of providing meaningful access to Plaintiff and other persons with similar disabilities, Defendant agrees to perform the barrier remediation (improvements, alterations and/or policy changes) stated in Exhibit B, attached hereto, and incorporated herein by reference. The Parties agree that barrier removal and access remediation will be addressed only in the manner as described in Exhibit B attached hereto and by this reference made a part hereof.

        3.1 Within twelve months of the execution of this Agreement by all parties, Defendants shall complete equitable relief items in accordance with the schedule provided in Exhibit B. During the term of the Agreement, the policies described in Exhibit B shall be an ongoing obligation. In the event that unforeseen difficulties outside of Defendant's control prevent Defendant from completing any of the agreed-upon injunctive relief within the timeframe designated, Defendants or its counsel will notify Plaintiff's counsel in writing within fifteen (15) business days of discovering the delay. Plaintiff will have forty-five (45) days to investigate and meet and confer, and to approve the delay by stipulation or otherwise respond to Defendant's notice. If the Parties cannot reach agreement regarding a delay in completing the equitable relief identified in Exhibit A, then following the 45-day period and an additional 5 days, Plaintiff may seek enforcement of the Agreement by the Court.

        3.2 If before the end of the Court's retention of jurisdiction referenced in Paragraph 4 the Parties do not agree on whether the Defendant has, will, or will not perform the further work or remediation as identified in Exhibit B, and Plaintiff contends the work or remediation was not reasonably completed, and if timely requested by Plaintiff, they shall meet and confer in person within thirty (30) days of Plaintiff's objection in an effort to resolve their differences. If within sixty (60) days of Plaintiff's objections the Parties have still been unable to resolve their differences, then pursuant to Paragraph 3, Plaintiff may seek the Court's assistance to enforce this Agreement. Plaintiff expressly reserves any right he has under applicable law to attorneys' fees, litigation expenses and costs for any enforcement action under this Agreement, and the Parties agree that the Defendants expressly reserves any right it may have to oppose Plaintiff's request for such fees, litigation expenses, and costs. The Parties understand that the that

-3-

Plaintiff may assert that attorney fees provisions of the statutes applicable to the claims identified in the Action apply to the enforcement of this Agreement, and, that Defendant may assert all defenses to such claims, and, may further assert that the attorneys' fees provisions do not apply. Paragraph 3.2 does not extend the Court's retention of jurisdiction related to this Agreement and does extend the 36-month period for Plaintiff to enforce the Agreement.

**4.** Court Retention of Jurisdiction. The Parties shall request that the Court retain jurisdiction of the terms of this Agreement and Exhibit B for a period of thirty six (36) months pursuant to the Stipulation for Dismissal of Action With Prejudice and [Proposed] Order for Court to Retain Jurisdiction to Enforce Settlement Agreement, which is attached hereto as Exhibit A, and this Agreement shall be an exhibit to the Dismissal with Prejudice.

**5.** **Plaintiff's Release of All Claims Against District.** In consideration of the payment hereunder identified in Paragraph 2, and the provisions, terms, covenants and promises contained in this Agreement, Plaintiff, on behalf of himself, his heirs, executors, successors and assigns, hereby fully, finally and forever releases, acquits and discharges District, and each of its successors, assigns, directors, elected officials, officers, directors, agents, representatives, employees, attorneys, indemnitors, and insurers, collectively referred to herein as "releasees," and each of them from any and all claims, claims for money, demands, actions, causes of action, liabilities, obligations, damages of any kind whatsoever (including, but not limited to those for monies, monetary or pecuniary damages, pecuniary loss, physical injuries, personal injuries, emotional or mental distress), penalties, equitable relief of any kind whatsoever, and attorneys' fees, costs or expenses of any kind whatsoever, whether known or unknown, arising from any cause referred to, connected with or arising from causes of action, matters, events, occurrences, failures to act and omissions which were or could have been alleged in the Action. It is the intent of the parties that the Agreement and this release will be broadly construed for the purpose of carrying out the intentions of the parties. The terms and conditions of the Agreement shall survive the foregoing release.

**6.** **Civil Code Section 1542 Release**. The parties acknowledge and agree that they are aware of and understand the provisions of Code of Civil Procedure section 1542 quoted below, and freely and voluntarily and knowingly waive the benefits of said section which provides:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

**7.** **No Admission of Liability of Fault**. It is understood that the Agreement does not constitute an admission by the Parties of any liability but is in compromise of disputed claims, and the Agreement shall not be admissible in any action or proceeding of any kind whatsoever as an admission or concession of liability or fault.

-4-

**8.** **Representation and Warranty**. Plaintiff represents and warrants that he has not sold, assigned, conveyed, or otherwise transferred, prior to the date of the Agreement, any interest in any claim or demand which he had or now has or may claim to have which is released hereunder and hereby agrees that he shall not ever sell, assign, convey or otherwise transfer any such claim or demand. Plaintiff represents that no portion of the payment under Paragraph 2 is made to compensate Plaintiff for past, present, or future medical expenses.

Plaintiff agrees to cooperate with District (and each of its successors, assigns, officers, directors, agents, representatives, employees, attorneys, indemnitors, and insurers, and each of them) in any action or claim against District involving any and all liens, subrogation claims and other rights that are asserted by any person against the amount paid in settlement of the Action or against any recovery by the Plaintiff in the Action. Further, Plaintiff agrees to indemnify and holds Defendant and each of the releasees harmless from any liabilities, claims, demands, damages, expenses, and attorneys' fees incurred by Defendant and the releasees as a result of such assignment or transfer of any such claim. This Agreement may be pled as a defense and/or cross-complaint, countersuit, cross claim, or third-party complaint in such suit or proceeding.

**9.** **Advice of Counsel**. The parties hereto, and each of them, represent and warrant that they have been fully advised by their respective attorneys concerning their rights and have further been advised by their attorneys as to the terms and effect of the Agreement and/or the Dismissal with Prejudice.

**10.** **Voluntary**. It is expressly understood and agreed that the Agreement has been freely and voluntarily entered into by the parties, and each of them, that no representations or promises of any kind other than as contained in the Agreement have been made by any party to induce any other party to enter into the Agreement (including, without limitation, any representations or promises concerning any tax ramifications of this Agreement), that the Agreement constitutes the entire understanding of the parties with respect to the settlement, and that the Agreement may not be altered, amended, modified or otherwise changed except by a writing executed by each of the parties hereto.

**11.** **Cooperation and Further Documentation**. Each party hereto agrees to execute and deliver any and all documents and to take any and all actions necessary or appropriate to consummate the Agreement and to carry out its terms and provisions.

**12.** **Inure to Benefit of Successors, Heirs, and Assigns**. The Agreement shall be binding on and inure to the benefit of the successors, heirs, and assigns of the respective parties hereto.

**13.** **Entire Agreement**. This Agreement contains the entire written agreement between the parties and shall be effective upon the last date of execution of the Agreement by Plaintiff and Plaintiff's counsel on the one hand, and, execution by the District and District's counsel on the other hand, and, the Court dismissing the matter with prejudice while ordering that it is retaining jurisdiction over the Action to enforce the Agreement pursuant to Paragraph 4 and Exhibit A of the Agreement  ("Effective Date"). The terms of the Agreement are contractual and not a mere recital; any representations or promises not specifically detailed in

this document will not be valid or binding on the parties to this Agreement.  Any modification to the terms of this Agreement must be made in writing and signed by all parties to this Agreement.

14.    **Applicable Law**.  The Agreement shall be construed in accordance with the substantive laws of the United States of America and the State of California.

15.    **Ambiguities**.  Plaintiff and District have both reviewed the Agreement and have been given full opportunity to participate in choosing the language to be used herein.  The parties further acknowledge that they have been given the opportunity to discuss the contract language with their respective attorneys and have bargained concerning the same.  The language in this Agreement shall be interpreted as to its fair meaning and not strictly construed for or against any party.

16.    **Saving Clause**.  If any provision or term of this Agreement or its application to any person or entity or circumstance shall be held by a court to be invalid or unenforceable, the remainder of this Agreement or the application of such provision to persons, entities or circumstances other than those to which it is held invalid or enforceable shall not be affected and each provision of this Agreement shall be enforced to the fullest extent permitted by law.

17.    **Counterparts and Facsimile or Electronically Transmitted Signatures**.  The Agreement may be executed in counterpart and fully executed agreements by counterparts shall serve as if one document had been executed in full by all parties hereto, and facsimile or electronically transmitted signatures shall be valid and of the same force and effect as original signatures.

**PLEASE READ CAREFULLY.  THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN OR UNKNOWN CLAIMS.**

Dated:  9/5/2023

**ANDREW GALPERN**

**ALAMEDA-CONTRA COSTA TRANSIT DISTRICT**

Dated: September 14, 2023

By:
Name:  Jill A. Sprague
Title:  General Counsel

-6-

**APPROVED AS TO FORM:**

FENNEMORE WENDEL

By: _____
    KURT A. FRANKLIN
    Attorneys for Defendant
    ALAMEDA-CONTRA COSTA
    TRANSIT DISTRICT

DERBY, McGUINNESS &
GOLDSMITH, LLP

By: _____
    ANTHONY E. GOLDSMITH
    Attorneys for Plaintiff
    ANDREW GALPERN

-7-

# EXHIBIT A

1  Kurt A. Franklin (Bar No. 172715)
   **FENNEMORE WENDEL**
2  1111 Broadway, 24th Floor
   Oakland, California 94607-4036
3  Telephone: (510) 834-6600
   Fax: (510) 834-1928
4  Email:  kfranklin@fennmorelaw.com

5  Attorneys for Defendant
   ALAMEDA-CONTRA COSTA TRANSIT
6  DISTRICT

7  Anthony Edward Goldsmith (Bar No. 125621)
   **DERBY MCGUINNESS & GOLDSMITH**
8  21550 Oxnard Street, Suite 300
   Woodland Hills, CA 91367
9  (818) 213-2762
   Fax: (510) 359-4419
10 Email: agoldsmith@dmglawfirm.com

11 Attorneys for Plaintiff
   ANDREW GALPERN
12

13

14

15

16                    UNITED STATES DISTRICT COURT

17        NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DISTRICT

18

19

20 ANDREW GALPERN,                          Case No. 20-cv-02572-TSH

21            Plaintiff,
                                            **STIPULATION FOR DISMISSAL OF**
22     vs.                                  **ACTION WITH PREJUDICE AND**
                                            **[PROPOSED] ORDER FOR COURT TO**
23 ALAMEDA-CONTRA COSTA TRANSIT             **RETAIN JURISDICTION TO**
   DISTRICT                                 **ENFORCE SETTLEMENT**
24
              Defendants.
25

26

27

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
        STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND [PROPOSED]
        ORDER FOR COURT TO RETAIN JURISDICTION TO ENFORCE SETTLEMENT
        29618363.1/062638.0001

1      IT IS HEREBY STIPULATED by and between Plaintiff ANDREW GALPERN, on the

2 one hand, and, Defendant ALAMEDA-CONTRA COSTA TRANSIT DISTRICT on the other

3 hand, the parties to this action, by and through their respective counsel, that pursuant to Federal

4 Rule of Civil Procedure 41(a)(1)(A)(ii), the above-captioned action be dismissed with prejudice in

5 its entirety.  Each side shall pay its own attorneys' fees and costs except as expressly set forth in

6 the Court-Enforceable Settlement Agreement And General Release ("Settlement Agreement and

7 General Release").  Defendant agrees to the dismissal with prejudice.

8      Further, Plaintiff and Defendant have entered into the attached Settlement Agreement and

9 General Release which settles all aspects of the lawsuit against Defendant without admission by

10 any party of wrongdoing, liability, or fault.  The Settlement Agreement and General Release states

11 in-part that "The Parties shall request that the Court retain jurisdiction of the terms of this

12 Agreement and Exhibit B for a period of thirty six (36) months pursuant to the Stipulation of

13 Dismissal of Action With Prejudice and [Proposed] Order for Court to Retain Jurisdiction to

14 Enforce Settlement Agreement, which is attached hereto as Exhibit A, and this Agreement shall be

15 an exhibit to the Dismissal with Prejudice." This is to ensure that the parties have the ability to

16 seek this Court's help in enforcing enforcement of the Settlement Agreement and General Release,

17 the parties respectfully ask the Court to retain jurisdiction to enforce the Settlement Agreement

18 and General Release and its incorporated exhibits.

19      This Stipulation and Order may be signed in counterparts, and facsimile, or electronically

20 transmitted signatures shall be valid and binding as original signatures.

21      WHEREFORE, Plaintiff and Defendant, by and through their attorneys of record, so

22 stipulate.

23

24

25 Dated: _____

DERBY MCGUINNESS & GOLDSMITH

26

27 By: _____

Anthony Edward Goldsmith

Attorney for Plaintiff

28

2

STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND [PROPOSED] ORDER FOR COURT TO
RETAIN JURISDICTION TO ENFORCE SETTLEMENT

29618363.1/062638.0001

FENNEMORE WENDEL
ATTORNEYS AT LAW

1 | Dated:  July 26, 2023                                    FENNEMORE WENDEL

2

3

4                                                        By: _____
                                                                KURT A. FRANKLIN
5                                                               Attorney for Defendant

6

7                                                              ORDER

8

9          Pursuant to the Settlement Agreement and General Release, and for good cause shown, the

10   Court shall retain jurisdiction of this action to enforce provisions of this Settlement Agreement

11   and General Release for thirty-six (36) months after the date of entry of this Order by the Court, or

12   until injunctive relief is complete, whichever occurs earlier.

13

14

15   Dated: _____, 2023                        _____
                                                          HONORABLE THOMAS S. HIXON
16                                                        United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28
                                                           3
STIPULATION FOR DISMISSAL OF ACTION WITH PREJUDICE AND [PROPOSED] ORDER FOR COURT TO
RETAIN JURISDICTION TO ENFORCE SETTLEMENT
29618363.1/062638.0001

# EXHIBIT B

*Andrew Galpern v. Alameda-Contra Costa Transit District*
**(U.S.D.C. for the Northern District of California Case No. 20-cv-02572-TSH)**

EXHIBIT B – EQUITABLE RELIEF

1. **Mandatory Securement.** The District will use a "system choice" mandatory securement policy to ensure seated mobility devices and scooters are secured to buses. (Note, bus operators are not required to secure walkers with seats (even if they have wheels), or, any other devices not intended for a person to remain seated.)

   1.a. **Failed Securement.** For purposes of the Agreement, "securement" shall mean that all of the securement straps, equipment and/or positions that are part of the securement system for the bus in question have been applied correctly per manufacturers' instruction and District-provided training. The mobility device shall not be able to move, in any direction, more than 2" with the brakes off, or, in "roll mode." If securement cannot be achieved and it's not due to equipment failure, after telling the passenger that securement cannot be achieved and if requested by the passenger, the bus operator may transport the passenger but must record the failed securement by immediately reporting the incident to Operations Control Center (OCC). Further, reports to Operations Control Center (OCC) of the inability to achieve securement under this provision, at an interim that will be no less than monthly, shall be made available to (a) the District's Civil Rights and Compliance Department, (b) the District's Accessible Services Department, (c) the General Manager's Access Committee, (d) the District's General Counsel's office, and (e) the District's Drivers' Committee.

   1.b **Equipment Failure.** If the wheelchair or seated mobility device cannot be secured and it is due to the District's equipment failure, it shall be immediately reported to Dispatch and Operations Control Center (OCC). Further, in a case of failed securement equipment, unless the bus has less than 30 minutes left on its run, the bus shall be taken out of service. In addition, in a case of failed securement equipment, at an interim of no less than monthly, reports shall be made available to (a) the District's Office of Civil Rights and Compliance, (b) the District's Accessible Services Representative team, (c) the General Manager's Access Committee, (d) the District's General Counsel's office, and (e) the District's Drivers Committee.

   Once a bus is take out of service because securement equipment has failed, a written report shall be generated to identify the bus number, the name of the operator who asked to have the bus taken out of service due to equipment failure, the route, the time of day, the reason the alleged securement equipment is not working, and the action needed (if any) to fix, replace, or repair the securement equipment. Upon request, this failed securement equipment report shall be made available to members of the public.

   1.c. **Passenger Refusal and Signs at Accessible Seating Positions.** If a passenger refuses to have their mobility device or scooter secured, the bus operator shall immediately report the incident to **Operations Control Center (OCC).** Further, reports to **Operations Control Center (OCC)** on passenger refusals, at an interim that will be no less than monthly, shall be made available to (a) the District's Civil Rights and

*Andrew Galpern v. Alameda-Contra Costa Transit District*
**(U.S.D.C. for the Northern District of California Case No. 20-cv-02572-TSH)**

EXHIBIT B – EQUITABLE RELIEF

Compliance Department, (b) the District's Accessible Services Department, (c) the General Manager's Access Committee, (d) the District's General Counsel's office, and (e) the District's Drivers' Committee. The District shall, on each of its buses in operation, place a sign at each accessible seating area that states (in color contrasting print of 5/8" minimum character height, to the maximum extend feasible if the size/space for a sign is limited): **"Please allow the bus operator to properly secure your mobility device. It is safer for you and the those around you if your device is secured. AC Transit has a policy to secure every wheelchair, scooter or other mobility device that can be secured and a refusal to be secured must be reported to a supervisor by the bus operator."**

2. **Communication to Passengers About Mandatory Securement Policy.** The District will improve communication regarding its mandatory securement policy by (a) adding signs in the securement areas of all buses, and (b) adding a separate "ADA" tab or button on the opening page of its website (in addition to accessing this area through "Civil Rights"). The signs in the securement areas of buses, and District's ADA tab or button on the opening page of its website will have this, or similar, language: "As allowed by 49 CFR Part 38. Section 37.165 (c) (3) of the DOT ADA regulations, AC Transit has adopted a policy that requires all passengers to have their wheelchairs secured aboard the bus. Thus, for your safety and the safety of passengers around you, AC Transit asks bus operators to secure wheelchairs and similar wheeled mobility devices to the bus. Operators are trained so that when securement straps are used, there should not be more than 2" of slack when your wheelchair or mobility device is parked with its brake on, or, when it is in neutral. While bus operators will use their best efforts to secure your wheelchair and mobility device, if your device cannot be secured in accordance with bus operator training, or is difficult to secure, you will not be denied boarding."

3. **Monitoring Program for Mobility Device Securement.** For a period of 36 months, the District will adopt a program to monitor bus operator wheelchair securement, attached to this **Exhibit B** to the Agreement as **Addendum A**. Nothing in the Agreement is intended to limit the District's ability to add to the monitoring program. The District will review the results of the monitoring program and (a) will take appropriate actions (if any) to ensure bus operators are following District policies related to mobility device securement, and (b) if there are regular failures in securement, to take necessary and reasonable steps to address and correct failed wheelchair and/or other seated mobility device securement.

4. **Tether Strap Program.** The District will continue its current policies related to providing tether straps and training to passengers who use wheelchairs, or, who use other seated mobility devices. This program will be offered at multiple locations by appointment only. A description of the tether strap program and current locations will be made available on the District's website and by calling the Wheelchair Marking and Tether Strap Program Hotline. A description of the tether strap program will be printed in

*Andrew Galpern v. Alameda-Contra Costa Transit District*
**(U.S.D.C. for the Northern District of California Case No. 20-cv-02572-TSH)**

EXHIBIT B – EQUITABLE RELIEF

a brochure or other handout for bus operators to give to passengers and will also include information on how to book an appointment at the various locations.

5. **Bus Operator Training and Bulletins.** The District agrees to communicate its mandatory securement policies to its bus operators, other appropriate employees, and, to contractors (if any) who may drive District passengers on buses.  As part of this communication, the District shall provide these persons with the Bulletin attached to this **Exhibit B** to the Agreement as **Addendum B.**  In addition, the District will refresh its bus operator training to help assure as best as may be practicable that all bus operators are trained to proficiency in the securement of wheelchairs and other seated mobility devices. Bus operators who cannot demonstrate proficiency in the securement of wheelchairs and other seated mobility devices may – consistent with District Policies, the District's Collective Bargaining Agreement with the bus operator's union (Amalgamated Transit Union, Local 192),  and State bargaining laws, rules and regulations –  be put on notice that they will not allowed to operate District buses until the can demonstrate proficiency in the securement of wheelchairs and other seated mobility devices.

**ADDENDUM A**



<u>**Monitoring Program for Securements**</u>

<u>Purpose</u>

AC Transit was sued by two bus passengers alleging bus operators had failed to properly secure their mobility devices to various fixed-route buses. While no passengers have been injured, and AC Transit has denied allegations of wrongdoing, AC Transit always supports safer transportation. Towards this end, AC Transit is taking additional steps to draw attention to this important issue, and, to ensure its operators properly secure mobility devices on buses, i.e., the wheelchair or other mobility device to the vehicle.

In addition to refreshed training, AC Transit is deploying a secret bus rider program that is intended to help ensure agency and operator accountability, to assess operator performance in an unbiased way, and to recognize AC Transit bus operators who are the most accomplished in ensuring that our bus passengers with disabilities are safe. The goal is simple: Nobody is perfect, but AC Transit wants safer trips on its buses when they are loaded with wheelchairs and other mobility devices. This protects our passengers with disabilities, other passengers, and AC Transit employees.

With this program, AC Transit intends to audit operator performance in securing mobility devices, and, intends to recognize its bus operators who rate at the highest level in providing passengers with disabilities safe transportation.

<u>Method</u>

1. "Secret" Passengers – Types
   a. Paid passengers trained by our expert and tasked with completing a full assessment of any observed securements
      1. Passengers with disabilities who use wheelchairs or other mobility devices
      2. Able-bodied passengers
   b. Frequent, regular, day-to-day bus riders who volunteer (unpaid) to complete online surveys or "google" forms regarding their observations of securements

2. Routes
   a. AC Transit will collect 2-4 weeks of data regarding lift deployment for recommended routes to determine which routes are frequently and infrequently boarding wheelchairs
      i. Recommendation for route sampling based on feedback from General Manager's Access Committee (GMAC) and/or Accessibility Advisory Committee (AAC) members, Planning, and Plaintiff.
3. Data Collected

    a. Forms or Electronic Submission
        i. Range from In-Depth Assessments to short surveys
        ii. Blank copies provided to Operators during Refresher Training and/or at their request before Monitoring Program begins so they understand how they will be evaluated

Frequency and Duration

20 hours per Sign Up (Fall, Winter, Spring, Summer) period for 36 months. Times and days based on expert recommendations, route analytics and anecdotal information from GMAC and/or AAC members.

Evaluation of Monitoring Program

District Employee in charge of ADA compliance will review data gathered by Secret Passengers and will prepare a report for each Division following each Sign-Up period regarding the following:

1. Analytics
    a. Number of securements performed
    b. Securements "Grade" to Division based on evaluations
2. Operator Performance
    a. Acknowledging exceptional securements
    b. Recommending training for below expectation securements
        i. Following up with Division regarding whether Operator was trained
3. Reports provided to Accessible Services for presentation to GMAC and/or AAC
4. Creation of a committee tasked with tracking securement performance

**ADDENDUM B**



TRAINING AND EDUCATION DEPARTMENT
SUMMARY SHEET

### Mobility Device Securement

### AC TRANSIT HAS A MANDATORY SECUREMENT POLICY

***What does this mean?***  It means operators are required to secure all mobility devices and passengers must allow their mobility device to be secured when riding AC Transit buses.

### YOU ARE TRAINED TO SECURE MOBILITY DEVICES OF DIFFERENT SHAPES AND SIZES!

**"Working Together"**
Securing Mobility Devices requires you to leave your seat and help passengers in a respectful and courteous way. Listen to your passengers regarding their securement needs. Kindly communicate your concerns to the passenger regarding securement of their mobility device. ALWAYS offer the lap **and** shoulder belts as a safety measure after performing the securement.

**Six Steps to Forward-Facing Securement Using ALL Straps**
1. Passenger positions chair, leaving room to secure rear straps.
2. Secure all rear straps/hooks.
3. Take up slack in rear, after passenger backs into final position.
4. Secure and tighten all front red straps/hooks
5. Ask passenger to move Mobility Device to look for excess slack. Tighten if needed.
6. Offer application of black lap and shoulder belts.

**Three Steps to Rear-Facing Securement**
1. Ask passenger to back up to the padded backrest as close as possible. Make sure the mobility device handles or passenger's belongings don't prevent backing up all the way.
2. Ask your passenger to set wheelchair brakes and/or turn off power.
3. Important: Pull black lap belt around and clip low across the passenger's lap (underneath armrests if possible; also attach shoulder belt if desired). If your passenger states they want to apply the lap belt themselves, confirm they did so properly and provide help if asked.

**As a final check to forward-facing or rear-facing securement, ask passenger to move Mobility Device to confirm that it cannot move more than 2" in any direction.**

| |
|---|
| **Can't Perform Securement? Passenger Refusing Securements? Securements do not work?** <br><br> ***ALWAYS CONTACT  OCC and wait for instructions!*** |

***Passenger will not let you secure their mobility device.***
If a passenger refuses to have their mobility device or scooter secured, the bus operator may transport the passenger but must record the refusal by immediately reporting the incident to Operations Control Center (OCC).
***Even with all the securements tightened; the Mobility Device is still moving too much?***
Communicate!  Explain the problem to the Passenger, maybe they can help. THEN CONTACT OCC and report a securement failure.
***A securement strap isn't working properly or is broken?***
This should have been discovered in your pre-trip inspection. CONTACT OCC and notify them of the equipment failure so the bus can be taken out of service as soon as possible.

THIS BULLETIN IS NOT INTENDED AS A REPLACEMENT OF THE TRAINING YOU RECEIVE FROM THE TRAINING AND EDUCATION DEPARTMENT REGARDING AMERICANS WITH DISABILITIES ACT (ADA) AND THE SECUREMENT PROCESS RELATED TO MOBILITY DEVICES AND SCOOTERS.